UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| MICHAEL BARKARRI FOSTER, | Case No. 22-cv-00878-WHO (PR) |
|---|---|
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;** |
| v. | |
| C. CROSBY, et al., | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | Dkt. Nos. 44 and 45 |

## INTRODUCTION

The parties have filed competing motions for summary judgment concerning plaintiff Michael Barkarri Foster's claims that his jailors at Pelican Bay State Prison used excessive force against him in violation of the Eighth Amendment. Foster's excessive force claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) because success on such claims would imply the invalidity of the guilty finding against him for battery on a peace officer. Accordingly, defendants' motion for summary judgment is GRANTED and Foster's motion for summary judgment is DENIED. Foster may refile suit if the guilty finding is invalidated in one of the ways specified in *Heck*.

## BACKGROUND

### i.  Cell Extraction and Medical Examinations

Foster alleges that he was attacked by guards at Pelican Bay State Prison on February 1, 2021:

> On 2-1-21, my 8th and 14th amendment rights were violated. The morning of SGT. Puente ordered the cell I occupied (160) to open. When C.O. L. Sullenger opened the cell door, (C.O.'s) D. Eades, C. Crosby, M. Shaffer, and B. Tubbs entered the cell and battered me and stabbed me. While in cell

(160) I felt my life was in danger so I started fighting. While fighting on my feet, I seen [*sic*] (C.O.) C. Crosby with a sharp object in his hand, swung [*sic*] and hit me in my face on right side. The pain was so imnenes [*sic*] that I bent over still swinging. Thats [*sic*] when I seen (C.O.) M. Shaffer hit me with a baton on my lower right knee which made me drop to the floor. While I was proned out on the floor, I was stabbed again on my right leg below my knee. When I yelled I turned my head and seen [*sic*] (C.O.) C. Crosby by my right leg while (C.O.) B. Tubbs came down on the back of my legs with a shield. Shortly after I was handcuffed and taken out of the cell with blood all down my shirt and all over the cell floor. While in the hallway of (A.S.U.) I then seen [*sic*] (C.O.) M. Shaffer go inside the cleaning closet and come out with a bleach bottal [*sic*] stating, 'It's blood everywhere on the floor in there.' Then I heard (SGT.) J. Puente state to I.G.I., 'we're just going to say that the batteries were dead in the camera.' The (RVR) (Log Number: 000000007060513) will show the (7219) medical photos.

(First Am. Compl., Dkt. No. 10 at 5-6.)

Defendants offer a different version of events. They allege that on February 1, 2021 at roughly 7:05am, Foster had placed a piece of cardboard to block the view into his cell. (MSJ, Dkt. No. 44 at 8.) In consequence, custody staff were posted at the cell door to observe him. (*Id.*) At 7:40am, Foster was found unresponsive by mental health staff during medical rounds. (*Id.*)

After Sergeant Puente was notified, he went to Foster's cell and attempted without success to obtain a response. (*Id.*) Staff declared a medical emergency and assembled a medical cell extraction team, who were outfitted with personal protective equipment. (*Id.*) The team consisted of Tubbs (assigned to shield), Shaffer (assigned to baton), Eades (assigned to handcuffs), and Crosby (assigned to leg restraints). (*Id.*)

Puente ordered the control room to open Foster's cell. (*Id.*) Foster was standing toward the front of the cell as if waiting for the door to open. (*Id.*) Puente and the team members repeatedly ordered Foster to get on the ground, but he ignored the instructions. (*Id.*) Foster walked toward the team "with his arms out in a fighting position" to which Tubbs responded by using his shield to push Foster onto the lower bunk. (*Id.*) Once there, he resisted Tubbs's attempts to hold him there, disregarded multiple orders to stop resisting, and began "throwing punches and kicking at the officers." (*Id.*) As Crosby

2

approached him, Foster "kicked Crosby's left shin with his right foot and Officer Crosby responded with one right-handed strike to Foster's upper torso." (*Id.*) As Foster swung his fists at Tubbs and Shaffer, Shaffer used his baton to strike Foster's upper left arm. (*Id.* at 9.) Foster stopped swinging, lunged forward from the bunk, and landed on the ground. (*Id.*) Tubbs fell on top of him and applied his weight to Foster's back to restrain him, though Foster continued to try to break free by moving his body left and right. (*Id.*) When Foster stopped resisting a short time later, Crosby placed him in leg irons and Eades handcuffed him. (*Id.*) He was then taken to the medical unit. (*Id.*)

Foster was medically examined at roughly 8 a.m. (*Id.*) He had an abrasion or scratch to his right cheek that was actively bleeding, an abrasion or scratch on his right shin, also bleeding, and bruising or discoloration to his right thigh. (*Id.*) Foster was examined again around noon by a nurse who noted a puncture wound to the right cheek with active bleeding, a puncture wound to his right shin with active bleeding, a swollen right thigh with active bleeding, an abrasion or scratch to the back of the right shoulder, and an abrasion or scratch to the back of the right hand. (*Id.*) A third examination was conducted the next day, during which it was observed he had "what was now characterized as a puncture wound, cut, laceration, slash, abrasion, and scratch to the right cheek with a notable skin flap, as well as a puncture wound, cut, laceration, slash, abrasion, and scratch to the right upper shin with a notable 'indent/hole.' " (*Id.*)

### ii. Disciplinary Hearing and Decision

Foster was charged with committing battery on a peace officer, a violation of 15 Cal. Code Regs. § 3005(d)(1), to which he pleaded not guilty: "I didn't kick that man. I didn't assault or batter anyone." (*Id.* at 10.) He was found guilty and lost 150 days of custody credits as a penalty. (*Id.* at 11.) Those credits have not been restored. (*Id.*)

In determining Foster's guilt, the hearing officer relied on Eades's incident report, among others. (*Id.* at 18.) Eades states that Foster repeatedly refused the team's orders to get down and comply and that the team had to use "[b]atons and physical force" to "subdue Foster's attack." (*Id.*)

### iii.   Foster's Prison Sentence

Foster is serving a total determinate sentence of 18 years in state prison. (*Id.* at 11.) This sentence is based on the 12 years he received for his 2018 state court conviction for assault with a semi-automatic firearm, and the sentences he acquired during his incarceration: four years for his 2019 conviction for possessing/manufacturing a deadly weapon by a prisoner; one year for his 2020 conviction for battery on a non-prisoner; and one year for his 2022 conviction for battery on a non-prisoner. (*Id.*) His projected earliest possible release date is September 4, 2030. (*Id.*) Because he is serving a determinate sentence, relief on his claims would necessarily affect the length of his sentence.

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant

4

or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## DISCUSSION

Defendants contend that Foster's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the United States Supreme Court held that if a state prisoner's complaint seeks damages based on claims that would "necessarily imply the invalidity" of their underlying conviction or sentence, the prisoner may not pursue claims under section 1983, unless the conviction or sentence was reversed, expunged or called into question by issuance of a writ of habeas corpus. *Id.* at 486-87; *see Cunningham v. Gates*, 312 F.3d 1148, 1153 (9th Cir. 2002). *Heck* applies to prison disciplinary actions. For example, if a prisoner's section 1983 claim necessarily implies the invalidity of a disciplinary hearing and the resulting deprivation of good-time credits, such a claim is barred by *Heck*. *Nettles v. Grounds*, 830 F.3d 922, 928-29 (9th Cir. 2016) (citing *Edwards v. Balisok*, 520 U.S. 641, 644 (1997)). Conversely, if the § 1983 claim does not "raise any implication about the validity" of the disciplinary decision or affect the duration of his incarceration, the claim is not barred by *Heck*. *Id.* at 929 (quoting *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004)).

*Heck* bars a claim of excessive force where the excessive force is based on the same actions during a continuous transaction as the plaintiff's conviction for resisting arrest. *Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011); *Smith v. City of Hemet*, 394 F.3d 689, 696 (9th Cir. 2005) (en banc). "This is because a conviction for resisting arrest may be obtained under California law only if the officers do not use excessive force in the course of making that arrest." *Harrison v. Hedgpeth*, No. C 12-0963 YGR (PR), 2014 WL 46701, at *5 (N.D. Cal. Jan. 6, 2014).

5

The facts of *Harrison* are instructive. Plaintiff was found guilty of obstructing and resisting officers during their search of his cell for contraband. *Id.* at *3. He filed suit under section 1983 against the officers for their alleged use of excessive force. The court determined that plaintiff's suit was barred by *Heck*:

> Here, Lt. Sherman's determination that Plaintiff resisted peace officers in the performance of their duty when he failed to follow the officers' orders to cuff-up or prone-out necessarily includes a finding that the officers were engaged in the performance of their duties during that incident. Accordingly, the finding also, by necessity, means that the officers did not engage in excessive force by releasing pepper spray into his cell.

*Id.* at *6.

Another action, *Monaco v. Moberg*, No. CV 07-6536 CAS (FMO), 2008 WL 11411716, at *1 (C.D. Cal. Jan. 7, 2008), is also instructive. Plaintiff sued prison guards under section 1983 for excessive force, who stated they used force against plaintiff in response to his attack against Moberg, a prison guard. *Id.* Plaintiff pleaded no contest in state court to a charge of battery by an inmate on a non-confined person, a violation of California Penal Code § 4501.5. *Id.* at *2. That conviction barred his excessive force claims under *Heck* because his conviction for battery "may be lawfully obtained only if the correctional officers did not use unlawful force during the subject incident." *Id.* at *4. "To prevail on his § 1983 excessive force claim, plaintiff would necessarily need to demonstrate that Moberg used unnecessary or unreasonable force." *Id.*

Here, the hearing officer's determination that Foster ignored the officers' instructions and then committed battery on them, as stated in Eades's report, includes a finding that the officers were engaged in their duties and did not use unlawful force in stopping the attack. Therefore, if Foster succeeds on his excessive force claims in this suit, it would necessarily imply the invalidity of the prison disciplinary finding. *Nettles*, 830 F.3d at 929 (a state prisoner can challenge administrative determinations that do not "raise any implication about the validity of the underlying conviction.") Furthermore, there is no dispute that Foster's claims of excessive force are based on the same continuous

1 transaction as his guilty finding for battery on a peace officer or that he was found guilty of
2 battery on a peace officer. Because Foster's civil rights action is barred by *Heck*,
3 defendants' motion for summary judgment is GRANTED and Foster's motion for
4 summary judgment is DENIED.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. (Dkt. No. 44.) Foster's motion for summary judgment is DENIED. (Dkt. No. 45.)

Foster may refile suit if the guilty finding is invalidated in one of the ways specified in *Heck* (i.e., the conviction or sentence is reversed, expunged or called into question by issuance of a writ of habeas corpus in another case).

The Clerk shall terminate all pending motions, enter judgment in favor of defendants, and close the file.

**IT IS SO ORDERED.**

**Dated:** February 7, 2025



WILLIAM H. ORRICK
United States District Judge